**Billy Joe ARMENTO, Appellant,**

v.

**Jack BAUGHMAN, Warden of the Iowa State Penitentiary, and State of Iowa, Appellees.**

**No. 63270.**

Supreme Court of Iowa.

March 19, 1980.

James P. Cleary, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Lona Hansen, Asst. Atty. Gen., for appellees.

Considered by REYNOLDSON, C. J., and HARRIS, McCORMICK, ALLBEE and McGIVERIN, JJ.

McCORMICK, Justice.

This is an appeal from denial of postconviction relief. The questions involve allegations of concealment of exculpatory evidence and denial of effective assistance of counsel. We affirm the postconviction court.

Petitioner Billy Joe Armento was convicted and sentenced to life in prison for first-degree murder as the alleged "hit man" in the slaying of Anne King in Des Moines on March 12, 1975. The State's evidence was that the victim's husband Marion Archer King hired Armento and Lawrence Kocher to do the killing. Armento and King were tried jointly, and Kocher testified against them as a State witness. Armento appealed his conviction, and it was affirmed in *State v. Armento*, 256 N.W.2d 228 (Iowa 1977). King was also convicted, and his conviction was affirmed in *State v. King*, 256 N.W.2d 1 (Iowa 1977).

In his postconviction application Armento contended he was denied due process of law in violation of U.S.Const. amend. XIV because of alleged perjury, subornation of perjury and misrepresentations regarding plea negotiations, all of which resulted in concealment from him of exculpatory evidence. He also asserted he was denied effective assistance of counsel in violation of U.S.Const. amend. VI and XIV because his trial attorney did not inform him of his right to a separate trial and consulted with him only once while he was confined before trial in the Story County jail. The State denied his allegations. In an oral motion made just before the application was heard, the State contended Armento's first claim was barred because it had been adjudicated on direct appeal. After hearing, the postconviction court held the first claim was barred on that ground and held the claim of ineffective trial counsel was unmeritorious. This appeal followed.

■ I. *The concealment of exculpatory evidence claim.* A person is barred from relitigating in a postconviction proceeding any ground which was finally adjudicated on direct appeal. § 663A.8, The Code; *Snyder v. State*, 262 N.W.2d 574, 578 (Iowa 1978). The State contends the postconviction court was right in rejecting Armento's first claim on this basis.

Analysis of the grounds urged in the prior appeal shows Armento's present claim was not urged there. In the direct appeal, he contended the trial court erred in overruling his motion for new trial because of the State's nondisclosure of an alleged offer of immunity to Kocher in exchange for his testimony. *See* 256 N.W.2d at 228–29. We

said the contention was identical to one made in the *King* appeal, and we rejected it on the authority of *King. Id.*

The opinion in *King* shows the contention was based on a theory the State had an understanding with Kocher or had promised him leniency to obtain his testimony against Armento and King. Assistant County Attorney Donald Starr, who prosecuted the cases, had testified in a pretrial proceeding that no such bargain had been made. During cross-examination at trial, Kocher had denied any such agreement or promises had been made. When called as a defense witness, Robert H. Laden, Kocher's attorney, made a similar denial, but he said Starr had talked with him about possible leniency for Kocher if he cooperated with the prosecution. Starr did not testify during the trial. After the trial, the trial court dismissed on the State's motion all charges against Kocher, who had been preliminarily charged with murder but never indicted. Defendants filed a motion for new trial based in part on an allegation of the State's nondisclosure of an agreement with Kocher to obtain his testimony. They called Starr as a witness.

Starr again denied an agreement had been made but acknowledged the accuracy of Laden's testimony. This court held the evidence did not show the existence of an agreement or promises. On that basis, the court rejected the contention that evidence of an understanding or promises had been concealed. *See* 256 N.W.2d at 14–16.

The postconviction claim is different. Armento now relies on the alleged nondisclosure of the plea negotiations rather than nondisclosure of an understanding or promises. He alleges Starr denied in his pretrial testimony that plea discussions had occurred, Kocher denied in his testimony at trial that they had occurred, but Starr admitted in his testimony after trial that they had taken place. He asserts Kocher was guilty of perjury at trial, Starr suborned the perjury, and the effect was that exculpatory evidence was concealed from him. He says he wished to use the evidence to impugn Kocher's credibility. Because the present claim was not adjudicated in Armento's direct appeal, the postconviction court erred in holding it was barred on that ground.

■ The fact Armento's claim was not previously adjudicated does not necessarily mean he is entitled to urge it in his postconviction action. Under section 663A.8, he is still foreclosed from making the claim unless he met his burden to show a sufficient reason for *not* asserting it in his appeal. *Bledsoe v. State*, 257 N.W.2d 32 (Iowa 1977). The only evidence bearing on this issue is his testimony that he wanted the question raised in his direct appeal but his attorney failed to do so. The contest in the postconviction hearing was on the State's assertion the claim had been adjudicated in the appeal rather than whether Armento established sufficient reason for not having urged it then. Therefore the issue of sufficient reason was not addressed in the postconviction court's ruling. Rather than decide on this record whether Armento established sufficient reason, we elect in this case to assume, without deciding, that he did so. Thus we reach the merits of his first claim.

The record shows that in his pretrial testimony Starr denied any promises had been made to Kocher. He also testified:

Q. Did you ever tell his lawyer that if Mr. Kocher was helpful you folks would be helpful to him? A. No.

Q. No words like that at all to his lawyer, either Tom Hyland or Bob Laden? A. I think the only thing I have said to Mr. Hyland and Mr. Laden, or I think it was Tim Pearson who is also in that office, on Mr. Kocher is that the county attorney's office has not decided what we are going to do with him.

. . . . .

Q. Have you conveyed any message to the attorneys or to Mr. Kocher's family with respect to this matter, what will happen to Mr. Kocher? A. No.

Q. Have you given him any understanding with respect to what will happen to Mr. Kocher? A. The only conversation I have had with anybody is to the

effect we don't know at this point what will happen to Mr. Kocher.

.    .    .    .    .

Q. Just one last question. There has been no mention in exchange for Mr. Kocher's testimony you may only charge him with conspiracy to rob or conspiracy itself which carries a maximum penalty of 3 years? A. There has been no conversation that I am aware of to anybody along those lines.

Kocher testified at trial that no deal had been made for his testimony, and he also testified:

Q. You don't expect it, I take it, is that correct? A. I don't know.

.    .    .    .    .

Q. And in exchange for what you have to say today, it is my understanding there has been no promises, no threats, no deals whatsoever, is that correct? A. Yes it is.

Attorney Laden's testimony as a defense witness included the following:

Q. After you initially represented Mr. Kocher, were there any plea negotiations, plea bargaining, that existed between you and the county attorney's office? A. Yes.

Q. And what was the nature of the plea negotiation? A. The first conversation I had was with Mr. Don Starr, assistant county attorney.

.    .    .    .    .

Q. What was the nature of any negotiation at that time? A. . . . My partner, Mr. Hyland, was originally contacted to represent Mr. Kocher. Mr. Hyland was out of town and Judge Glanton requested I come down and talk to Mr. Kocher, which I did, and at that time Mr. Starr discussed the relevant evidence that they had in the case and advised me that we would certainly discuss possible plea bargaining arrangements for Mr. Kocher in the light of his testimony at that time.

Q. Was there any specific mentioning of terms of years or anything of that nature? A. At that time I wasn't aware of what particular crime he was referring

to since there are a number of them that would carry that, and we just indicated we would discuss it further at a later date.

Q. Was that fact communicated to your client? A. Yes.

.    .    .    .    .

Q. Were there any further negotiations relative to plea bargaining? A. Yes.

.    .    .    .    .

Q. What was the nature of those negotiations? A. Mr. Starr had, as I recall, approached my partner and had discussed the possibility of a conspiracy sentence, which carries 3 years, and I had also discussed that with Mr. Starr.

.    .    .    .    .

Q. Was there any further discussion relative to possible probation? A. As I recall, I think Tom Hyland and I both mentioned that to Mr. Starr, that we would be in hopes that could be worked out for Mr. Kocher although no definite arrangements were made.

.    .    .    .    .

Q. . . . [Y]ou did communicate that fact to Mr. Kocher, is that correct? A. Yes.

.    .    .    .    .

Q. Now with respect to waiver [of speedy trial] that was signed apparently by your client, what was the purpose behind that? A. Well, the purpose was mainly this, that the 60-day period for indictment in Iowa was soon to expire, and we had some negotiations with respect to plea bargaining and, it was thought best Mr. Kocher not be formally indicted for the crime.

Q. And this is, of course, coming from the county attorney's staff? A. Yes. We were approached by Mr. Starr, who notified us in fact the time was rapidly approaching and something needed to be done on that.

.    .    .    .    .

Q. . . . I take it from what you say that there were no guarantees from the county attorney's office with respect to the disposition, the 3-year or 10-year, is that right? A. Yes, that is correct.

Q. And you conveyed that to your client? A. Yes, sir.

In cross-examining Laden, Starr did not directly challenge his testimony concerning the plea negotiations. Instead he elicited responses from Laden acknowledging that no agreement had been made and that any agreement would have been subject to approval of the county attorney or his first assistant.

The State obtained its order dismissing all charges against Kocher on the day after the jury returned its verdict convicting Armento and King. In Starr's testimony in the hearing on the motion for new trial, he denied the charges against Kocher were dismissed pursuant to any agreement with him. His testimony included the following:

Q. Prior to that time, I take it you had discussion with Mr. Laden or Mr. Hyland with respect to the disposition of the charges against Mr. Kocher prior to Mr. Kocher taking the witness stand? A. Yes.

Q. You had indicated that there may be well in the offing the matter of leniency; that is, 3 years on conspiracy or 10 years, which is the minimum sentence under second-degree murder conviction; you had discussions along that line? A. . . . I don't recall that we talked about any particular number of years on second degree. The discussions were more Mr. Hyland, Mr. Laden and Tim Pearson asking my consideration about what I thought we could do.

Q. Your response to them would have been, we can do something, perhaps 3 years on conspiracy; perhaps 10 years on second degree, language to that effect, is that right? A. My response to all three of those gentlemen would have been we could probably do something, but we would have to wait until after the trial to make a decision.

. . . . .

THE COURT: Did [Mr. Laden's] testimony given in this trial in the presence of the jury truly and fairly and accurately represent the status of the negotiations relative to Mr. Kocher that existed up until the time after the jury came in? A. Your Honor, this is purely a matter of my opinion. Mr. Laden testified that there had been some negotiations dealing with Mr. Kocher. I would term those conversations offers to negotiate rather than sit-down negotiation sessions.

THE COURT: I think it is a matter of semantics; but was what Mr. Laden said a fair and accurate statement of this situation? A. Yes, it was.

Because a constitutional challenge is involved, we review this evidence de novo. *Watts v. State*, 257 N.W.2d 70, 71 (Iowa 1977).

We believe the evidence shows Starr misrepresented the facts in the pretrial proceeding when he testified the "only thing" he had said to Kocher's counsel was that "the county attorney's office has not decided what we are going to do with him." He also misrepresented facts when he testified no conversation had taken place with anyone along the lines that in consideration of his testimony Kocher might only be charged with conspiracy to rob or conspiracy which carried a three-year sentence. The inaccuracy of these statements is established by Laden's testimony during the trial and by Starr's testimony during the hearing on the motion for new trial in which he acknowledged the truth of Laden's testimony.

However, when Kocher's testimony is scrutinized, it appears he was not asked whether he knew of discussions of possible leniency in his case in exchange for his testimony. Although his answers to questions were artful in avoiding disclosure of such knowledge, he did not deny negotiations had occurred. He simply testified that no agreement had been reached or promises made and that he did not know whether he would receive consideration for his testimony. The truth was disclosed to the jury in Laden's testimony, and Laden's testimony was not impeached.

Therefore the conviction was not based on perjured testimony because no perjury by Kocher has been shown. Thus no predicate exists for the additional allegation of subornation of Kocher's perjury by Starr. Because the facts were fully disclosed in Laden's testimony, the evidence of plea negotiations was before the jury. As we said in *State v. King*, 256 N.W.2d at 16, "the jurors knew all existing facts regarding plea negotiations when they retired to deliberate." The only problem at trial was the State's failure to take any affirmative step to inform the jury of the accuracy of Laden's testimony.

When key witnesses for the prosecution deny they have received promises from the government, it is a denial of due process for the prosecution not to disclose promises which in fact have been made. *State v. King*, 256 N.W.2d at 15–16. The same rule applies when witnesses deny plea negotiations have occurred. *United States v. Fontenot*, 483 F.2d 315, 325 (5th Cir. 1973); *United States v. Tashman*, 478 F.2d 129, 131 (5th Cir. 1973). In Armento's direct appeal we recognized the right of a defendant to show bias or interest of an alleged accomplice who testifies for the prosecution by showing the accomplice's hope or expectation of leniency. *See* 256 N.W.2d at 229. The negotiations between the State and Kocher were relevant and material impeachment evidence under this principle.

However, because Kocher did not deny such discussions occurred and because the evidence of the discussions was placed before the jury in Laden's testimony, this case differs from those in which due process violations have been found. We believe this case is governed by the standard for nondisclosure of exculpatory evidence enunciated in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The nondisclosure at issue here is the failure of the State to admit before the jury the fact leniency discussions had taken place with Kocher as testified to at trial by his attorney. Under *Agurs*, the materiality of that nondisclosure must be evaluated in the light of the entire record. Viewed in

that light, "if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error had been committed." 427 U.S. at 112, 96 S.Ct. at 2402, 49 L.Ed.2d at 355. *See State v. King*, 256 N.W.2d at 16; *State v. Hall*, 249 N.W.2d 843, 847 (Iowa), *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977). We are convinced the omitted evidence in the present case would not create a reasonable doubt when considered with all the evidence in the trial.

Although we disapprove of the conduct of prosecutor Starr, we conclude that the nondisclosure of plea negotiations did not deprive Armento of due process under the *Agurs* standard. Therefore we find no merit in his first claim.

II. *The ineffective assistance of counsel claim.* Armento claims he was not informed of his right to have his case severed for trial from that of King. He also contends he was denied his right to consult his lawyer because his lawyer visited him only once during a period before trial of almost four months while he was incarcerated in the Story County jail.

His trial counsel, who with his firm also represented Armento in his first appeal, was William L. Kutmus. Because Kutmus was not called to testify in the postconviction proceeding, we have only Armento's testimony concerning these issues. However, the record itself refutes his contentions.

It shows he was jointly indicted with King, but the cases were severed for trial at a pretrial conference which Armento attended. Subsequently, Armento moved for consolidation of the cases for trial, but the motion was overruled because King had not joined it. At that time a defendant had a right to separate trial as a matter of right, with exceptions not applicable here. *See State v. Belieu*, 288 N.W.2d 895, 897 (Iowa 1980); *State v. Berry*, 247 N.W.2d 263, 264–65 (Iowa 1976). Although the record in this appeal does not show how the cases later were joined for trial, King must have consented to the joinder.

Because Armento was present at the pretrial conference when his case was severed for trial, we do not find his assertion of unawareness of his right of severance to be credible. The fee statement of attorney Kutmus shows research of the severance issue several days before the pretrial conference. It shows a "strategy session with parties" on the date the conference was held. It also shows a subsequent strategy session regarding the motion to consolidate. We believe the record adequately demonstrates Armento was aware of his right to separate trial and participated in the decision to be tried jointly with King. Furthermore, we find he did not prove Kutmus acted below the range of normal competency in counseling such a decision. *See generally State v. Killpack*, 276 N.W.2d 368, 372 (Iowa 1979).

We also find no merit in Armento's claim of inadequate opportunity to confer with Kutmus to assist in the preparation of his defense. Armento contends the fact Kutmus visited with him only once while he was in the Story County jail shows he was deprived of adequate opportunity to consult with his attorney to prepare his defense. Kutmus' fee statement shows meetings with Armento of several hours' duration on several occasions, one of which occurred in Nevada. They had lengthy discussions of the case on at least three occasions before trial after Armento was returned to the Polk County jail. We have no basis for believing he was denied effective representation by reason of having been held some of the time in jail in Story County.

We find no merit in Armento's claim of denial of his right to effective counsel.

AFFIRMED.