Dale Eugene COSGROVE, Appellant,

v.

STATE of Iowa, Appellee.

No. 63545.

Supreme Court of Iowa.

April 15, 1981.

Thomas M. Walter, of Barnes & Walter, Ottumwa, for appellant.

Thomas J. Miller, Atty. Gen., Shirley Ann Steffe, Asst. Atty. Gen., and Thomas F. Kintigh, Wapello County Atty., for appellee.

ALLBEE, Justice.

This is an appeal from an adverse judgment in a proceeding seeking postconviction relief under chapter 663A, The Code 1979. Petitioner Dale Eugene Cosgrove contends he was denied effective assistance of counsel, in contravention of the sixth and fourteenth amendments to the United States Constitution and article one, section ten of the Iowa Constitution, due to an alleged conflict of interest on the part of his court appointed attorney. The postconviction court found petitioner's claim to be without merit, and denied relief.

Petitioner was arrested on January 9, 1977 and charged on January 19 with robbery with aggravation, a violation of section 711.2, The Code 1975. The charge stemmed from the armed robbery by two men of a convenience store in Ottumwa. At petitioner's request, attorney Michael C. Vinyard was appointed by the court to represent him in connection with the alleged offense.

On January 9, 1977, Curtis Steele and James Walter were also arrested by Ottumwa police and charged with carrying concealed weapons after having been stopped in a pick-up truck which contained firearms. At this time, Walter first came to the attention of authorities as a suspect in the convenience store robbery. Walter attempted to arrange a "plea bargain" pursuant to which he would supply information concerning the robbery in return for a police recommendation that he be allowed to plead to a lesser charge. On January 20, Walter gave a statement to the Wapello County Attorney's office which implicated both himself and also petitioner in the convenience store robbery. In addition, the statement revealed that Steele's apartment had been utilized by the perpetrators both prior to and following the robbery; Walter, however, did not claim that Steele had been involved in the commission of the crime. The authorities at this point decided to question Steele about the robbery.

In the meantime, attorney Vinyard was contacted in behalf of Steele, and was present to represent him during the inquiry which took place on January 21. Although it was questionable that any evidence existed to link Steele to the robbery, it was agreed that in return for making a statement concerning his knowledge of the robbery he would not be charged in connection with that offense. Steele then gave a statement which further implicated petitioner in the robbery; Steele, however, maintained that he had no role in the crime. Several months later he pled guilty to a reduced charge with regard to the concealed weapons violation.

On January 24, petitioner entered a plea of guilty on Vinyard's advice, and was sentenced to twenty-five years at the men's reformatory. It appears that Vinyard's recommendation was based upon his knowledge of Walter's and Steele's contentions, coupled with an understanding that three other potential criminal charges would not be filed against petitioner in return for his plea of guilty.

Petitioner's claim for postconviction relief is predicated upon the assertion that Vinyard's actions in behalf of both Steele and petitioner constituted dual representation which resulted in a constitutionally impermissible conflict of interest. Following an evidentiary hearing, the postconviction court determined that no dual representation had taken place, and, even assuming such representation had occurred, petitioner had failed to demonstrate a substantial possibility that it resulted in a conflict of interest. See Jackson v. Auger, 239 N.W.2d 180, 183 (Iowa 1976).

Because petitioner has alleged a violation of a basic constitutional safeguard, his right to counsel, we are obliged to make an independent evaluation of the totality of the circumstances under which the postconviction court's ruling was made. Watts v. State, 257 N.W.2d 70, 71 (Iowa 1977); Jackson, 239 N.W.2d at 182.

▆ This court has considered the problems raised by dual representation in criminal cases on several previous occasions. *E.g., Jackson,* 239 N.W.2d at 183; *State v. Gatewood,* 179 N.W.2d 520, 521–24 (Iowa 1970). "Dual representation" occurs "when persons jointly charged are represented by the same lawyer." *Jackson,* 239 N.W.2d at 183; *Gatewood,* 179 N.W.2d at 521. It does not automatically deny a defendant his right to effective assistance of counsel. Rather, "the burden is upon the defendant to demonstrate a substantial possibility that the situation of dual representation created a conflict between his interests and the interests of the other person or persons represented. Actual prejudice need not be shown." *Jackson,* 239 N.W.2d 183.[1] In this case, however, Steele was not charged with the convenience store robbery at the time Vinyard represented him. Thus, because petitioner and Steele were not codefendants in the armed robbery prosecution, the post-conviction court was correct in concluding Vinyard's actions could not be considered "dual representation" as that term has been defined by this court.

Although not constituting dual representation, Vinyard's conduct nonetheless raises the question of a potential conflict of interest. There are situations in which an attorney or single firm's representation of both a defendant and a party or witness adverse to that defendant may involve the potential for divided loyalty. *See, e.g., Commonwealth v. Geraway,* 364 Mass. 168, 170–76, 301 N.E.2d 814, 815–18 (1973); *State v. Ray,* —— Minn. ——, ——, 273 N.W.2d 652, 654–56 (1978); *cf. Bizzett v. Brewer,* 262 N.W.2d 273, 275–76 (Iowa 1978) (no denial of effective assistance where adverse witness requested representation by defendant's attorney in connection with same matter, but attorney promptly recommended other counsel upon inquiring and discovering that witness could potentially implicate his client).[2]

1. We do not overlook Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In *Cuyler,* the Supreme Court held that a possibility of conflict of interest is insufficient to establish a claim of ineffective assistance of counsel under the sixth amendment where the multiple representation of codefendants is involved. "In order to demonstrate a violation of his sixth amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348. We need not decide in this case, however, whether *Cuyler* affects the "substantial possibility of conflict" standard we adopted with regard to dual representation under our interpretation of article I, section 10 of our constitution. *Cf.* Harvey v. State, Nev., 619 P.2d 1214, 1217 (1980) (while sixth amendment, as interpreted by United States Supreme Court, may not require inquiries by trial courts as to conflicts of interest in all cases of joint representation, such inquiries would safeguard the rights of defendants under Nevada Constitution article I, section 8 and would therefore be required in future trials involving joint representation).

2. *See generally* ABA Standards, *The Defense Function* §§ 3.5, 6.2(c) (1971). Note that the commentary to section 3.5 of the ABA Standards states in part:

Beyond the obligation of disclosure, there are situations in which the lawyer's independent representation of his client is so inhibited by conflicting interests that even full disclosure and consent of the client may not be an adequate protection. ABA Code DR 6–106. In criminal cases this most frequently occurs where the lawyer undertakes the defense of more than one co-defendant. In many instances a given course of action may be advantageous to one of the defendants but not necessarily to the other. The prosecutor may be inclined to accept a guilty plea from one of the co-defendants, either to a lesser offense or with a lesser penalty or other considerations; but this might harm the interests of the other defendant. The contrast in the dispositions of their cases may have a harmful impact on the remaining defendant; the one who pleads guilty might even, as part of the plea agreement, consent to testify against the co-defendant. . . .

Section 6.2(c) provides that "[i]t is unprofessional conduct for a lawyer to seek or accept concessions favorable to one client by any agreement which is detrimental to the legitimate interests of any other client." The commentary to that section states in relevant part:

The allegation has sometimes been made against lawyers and particularly the public defender system that the lawyer may be tempted to compromise the interest of one of his clients for the advantage of another. See Note, 76 Harv.L.Rev. 579, 603 (1963). The accusation has been repudiated as to public defenders, in part by pointing out that the pressure on the defender in this regard is little different from that which confronts private counsel who has a substantial criminal law practice. Whether the lawyer is the pub-

■■ We believe the potential conflict of interest inherent in the representation of both a defendant and an adverse party or witness is as substantial as in situations involving dual representation and should ordinarily militate against concurrent representation by counsel. *See Bizzett*, 262 N.W.2d at 275–76. Consequently, in evaluating claims of denial of effective assistance of counsel in situations in which a petitioner has established concurrent representation by a lawyer who has an attorney-client relationship with an adverse party or witness, we conclude that the standard employed in cases of dual representation should be applied.

Because this case involves the concurrent representation of petitioner and a material witness to the crime with which he was charged, petitioner must, therefore, demonstrate a substantial possibility that the representation created a conflict between his interests and those of Steele. *Jackson*, 239 N.W.2d at 183. With this principle in mind, we turn again to the circumstances underlying this appeal.

■ The alleged denial of effective assistance of counsel is based upon petitioner's assertion that Vinyard's representation of Steele resulted in the authorities' decision not to prosecute Steele for the armed robbery, and that by arranging this agreement for Steele, Vinyard provided incriminating evidence against petitioner in the form of the statement given by Steele. Our independent evaluation of the record convinces us that although Vinyard's concurrent representation created a potential conflict of interest, no prejudice resulted from his conduct under the circumstances of this particular case. The only defense tentatively advanced by petitioner prior to his pleading guilty was based upon an alibi purportedly supplied by two other men, Henry Keller and Bob Morris, Jr. By the

time Steele informed the authorities what he had witnessed of petitioner's conduct on the night of the robbery, however, they had already obtained Walter's statement; that statement, in addition to identifying petitioner, implicated both Keller and Morris as look-outs in the commission of the offense. Vinyard was aware of the statement provided by Walter when he advised petitioner to enter a plea of guilty. Moreover, it is undisputed that the authorities agreed not to pursue three other potential criminal charges against petitioner in return for his guilty plea. Without question, this concession was a persuasive factor in the collective decision to enter a plea of guilty. Thus, we are satisfied that under the totality of the circumstances, petitioner's cause was not prejudicially affected by Vinyard's representation of Steele.

By our decision here we do not mean to encourage concurrent representation such as that engaged in by petitioner's original attorney; to the contrary, it should ordinarily be avoided, or terminated when discovered. Nonetheless, in this case, we have found no prejudice resulting from Vinyard's concurrent representation of petitioner and Steele. The judgment of the postconviction court is therefore affirmed.

AFFIRMED.

All Justices concur except McCORMICK, UHLENHOPP and LARSON, JJ., who dissent and McGIVERIN, J., takes no part.

McCORMICK, Justice (dissenting).

The constitutional standard regarding multiple representation which we delineated in *Jackson v. Auger*, 239 N.W.2d 180, 183 (Iowa 1976), was derived from *Glasser v. United States*, 315 U.S. 60, 71, 75–76, 62 S.Ct. 457, 465, 467–68, 86 L.Ed. 680, 700–02 (1942). In *Jackson*, we said:

lic defender or is privately retained, he may have pending other cases which the prosecutor is eager to dispose of without trial, and defense counsel may volunteer the suggestion or be offered the possibility of a more favorable disposition of the case at hand if he will "cooperate" in the disposition of some

other case. Regardless of the motivation for the proposal and whether it originates with the defense attorney or the prosecutor, such conduct plainly violates the lawyer's fundamental duty of undivided loyalty to each client. See ABA Code DR 5–106.

The burden is upon the defendant to demonstrate a substantial possibility that the situation of dual representation created a conflict between his interests and the interests of the other person or persons represented. Actual prejudice need not be shown.

239 N.W.2d at 183.

The *Glasser* standard was recently reiterated in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The Court said:

> *Glasser* established that unconstitutional multiple representation is never harmless error. Once the Court concluded that Glasser's lawyer had an actual conflict of interest, it refused "to indulge in nice calculations as to the amount of prejudice" attributable to the conflict. The conflict itself demonstrated a denial of "[t]he right to have the effective assistance of counsel...." Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.... But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

*Id.* at 349–50, 100 S.Ct. at 1719, 64 L.Ed.2d at 347. In the present case, the court has rested its denial of postconviction relief on a finding of no prejudice. I am unable to reconcile this holding with the principle that prejudice need not be demonstrated to obtain relief.

The sole question is whether Cosgrove showed that Vinyard actively represented conflicting interests. I believe the testimony of attorney Vinyard was sufficient alone to satisfy this burden.

According to ABA Standards, *The Defense Function* § 6.2(c) (1971), it is "unprofessional conduct for a lawyer to seek or accept concessions favorable to one client by any agreement which is detrimental to the legitimate interests of any other client." The conduct is unprofessional because, as the commentary makes clear, the lawyer has a conflict of interest in that situation: "Regardless of the motivation for the proposal and whether it originates with the defense attorney or the prosecutor, such conduct plainly violates the lawyer's fundamental duty of undivided loyalty to each client." The standard is based on the principle in Iowa Code of Professional Responsibility DR 5–105(C): "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client...."

Vinyard's testimony may be summarized as follows. He first represented Cosgrove on the armed robbery charge. Cosgrove denied the charge and told Vinyard he had an alibi. Vinyard then commenced his representation of Steele on an unrelated concealed weapons charge. The police told Vinyard they wished to question Steele about the armed robbery. Vinyard went to Cosgrove. Without telling Cosgrove he represented Steele, he informed Cosgrove that the police wanted to talk to Steele about the robbery. He asked Vinyard what Steele "might be expected to say." Cosgrove continued to deny involvement in the robbery. Vinyard then went to Steele and asked him to tell him what he knew about the robbery. Steele told him "briefly what he had seen." Vinyard then told the police what Steele told him. The police then offered not to prosecute Steele on the robbery charge if Steele would give them a statement concerning his knowledge of that event. Vinyard accepted the offer. Steele then gave his statement implicating Cosgrove in the robbery.

Vinyard expressly accepted a concession favorable to Steele at the expense of the interests of Cosgrove. He actively represented conflicting interests. Cosgrove thus established the constitutional predicate for his claim of ineffective assistance of counsel. I would reverse the postconviction court on that basis.

UHLENHOPP and LARSON, JJ., join this dissent.