# IN THE COURT OF APPEALS OF IOWA

No. 19-0773
Filed November 30, 2020

**TYLER JAMES WEBSTER,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Jefferson County, Shawn R. Showers, Judge.

Tyler Webster appeals the district court's denial of his postconviction-relief application. **AFFIRMED.**

R.E. Breckenridge of Breckenridge Law P.C., Ottumwa, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

"Webster shot and killed Buddy Frisbie." *State v. Webster*, 865 N.W.2d 223, 226 (Iowa 2015). A jury found Tyler James Webster guilty of second-degree murder. On direct appeal, Webster argued that one of the jurors engaged in misconduct or evinced bias. *Id.* at 236. In addressing the issue, the supreme court explained, "[N]o record was made of voir dire or of the district court's preliminary admonition to the jury" but those "shortcomings" did "not raise a question of preservation of the claims so much as affect[ed] the viability of Webster's claims on the merits." *Id.* at 233. A record was made of an in-camera examination of the juror. *Id.* at 227. The court considered that record and other evidence in finding the claims unpersuasive. *Id.* at 233–40.

One justice specially concurred to note the presence of potential ineffective-assistance-of-counsel claims. *Id.* at 245 (Wiggins, J., concurring specially). The justice stated, "[I]ssues regarding ineffective assistance of counsel, if any" would "have to be fully explored in a postconviction-relief proceeding." *Id.*

Webster pursued that avenue. He filed a postconviction-relief application alleging his trial attorney was ineffective in (1) "waiving the transcription reporting of jury selection, voir dire, and the court's preliminary admonitions resulting in an inadequate record for appeal and further review on the merits"; (2) "failing to question [the] juror . . . in voir dire on her relationship with [the victim's] family and for failing to strike or move to dismiss said juror in the preliminary jury selection stage"; (3) "failing to develop the record during the in camera inspection of [the] juror . . . and failing to move to dismiss her for cause at the in camera stage"; and (4) "failing to raise a separate juror bias claim in addition to juror misconduct and

failing to raise distinct constitutional claims under the Iowa and United States Constitutions."[1]  The postconviction court denied the application following an evidentiary hearing.

On appeal, Webster reiterates that he "was denied effective assistance of counsel."  Ineffective-assistance-of-counsel claims have two components.  "First, the defendant must show that counsel's performance was deficient."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Second, the defendant must show that the deficient performance prejudiced the defense."  *Id.*  To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Constitutional prejudice will not be found where the evidence of guilt is overwhelming.  *See State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019).

We elect to focus on the prejudice prong of the *Strickland* test.  *See State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019) ("Failure to prove either prong is fatal to an ineffective-assistance-of-counsel claim.").  The postconviction court stated that prong was "a legal Mount Everest" for Webster.  On our de novo review of the constitutionally grounded ineffective-assistance claims, we agree.

In finding Webster guilty of second-degree murder, the jury considered the testimony of a woman Frisbie was dating.  She stated Webster barged in as Frisbie was kissing her and she saw Webster "standing over [them] with a gun."  As she "turned," Webster "shot [Frisbie]."  She "kind of stepped back in shock . . . [a]nd then he shot again."

---

[1] Webster's original application simply alleged "[j]ury [m]isconduct."  Counsel amended the application twice.

After the shooting, Webster told a 911 dispatcher that he "just shot a man in the face." He repeated the statement, stated the man was "dead," and identified the man as Buddy Frisbie. When the dispatcher asked if Webster was sure Frisbie was dead, Webster responded, "Oh, he's definitely dead. I shot him twice in the face." He described the gun, told the dispatcher it was "in the glove box of [his] truck," and provided his location. When the dispatcher asked why he shot Frisbie, Webster responded, "[T]here was an incident with a young lady. I thought it was getting out of control. He was hurting her . . . ." The woman Frisbie was dating dispelled this concern, testifying her contact with Frisbie was entirely consensual and she had no fear of him.

A special agent with the division of criminal investigation interviewed Webster following his arrest. Webster told him "he had shot Buddy Frisbie two times in the face." According to the special agent, Webster

> said that he didn't like the way that it appeared Buddy Frisbie was treating [the woman], but he may have misunderstood the situation. . . . He said he left the trailer, walked out to his white Mazda pickup truck and got his gun . . . , which is a .45 caliber semi-automatic handgun, retrieved it from his glove box, and went back into the trailer. . . . [H]e cycled the weapon to make it ready to be fired.

He shot Frisbie "at point-blank range." Webster told the special agent that "when he racked the slide back and made the weapon ready to fire that he knew there was no turning back." Webster ended the interview by saying, "It is what it is. It is what it is."

We conclude the evidence of guilt is overwhelming. Accordingly, there is no reasonable probability of a different outcome had Webster's trial attorney insisted on a record of voir dire, questioned the juror about her relationship with

Frisbie's family, more thoroughly developed the record of the in-camera examination and moved to dismiss the juror for cause following the examination, and raised distinct constitutional claims, including a claim of juror bias. *See Gunther v. State*, No. 09-0275, 2009 WL 3775147, at *6 (Iowa Ct. App. Nov. 12, 2009) ("[T]here was 'overwhelming record evidence from which a rational jury could find Gunther guilty of second-degree murder'. . . . [W]e conclude there is no reasonable likelihood that the outcome of Gunther's direct appeal would have been different if he had raised the juror misconduct issue.").

With respect to the claimed failure to raise a claim of juror bias, it is worth reiterating—as the postconviction court did—that the supreme court addressed the claim notwithstanding counsel's omission. Webster's efforts to recast the issue as an ineffective-assistance-of-counsel claim with due process underpinnings is a thinly veiled attempt to relitigate the issue. *See Holmes v. State*, 775 N.W.2d 733, 735 (Iowa Ct. App. 2009) ("Issues that have been raised, litigated, and adjudicated on direct appeal cannot be relitigated in a postconviction proceeding." (quoting *Wycoff v. State*, 382 N.W.2d 462, 465 (Iowa 1986))). He "cannot now relitigate issues decided adversely to him on direct appeal." *Id.*

We affirm the denial of Webster's postconviction-relief application.

**AFFIRMED.**