**David A. CARLSON, Appellant,**

v.

**STATE of Minnesota, Appellee.**

No. 90-5562.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1991.

Decided Sept. 24, 1991.

---

Paul Engh, Minneapolis, Minn., for appellant.

March S. Crain, Anoka, Minn., argued (Hubert H. Humphrey, III, St. Paul, Minn., and Robert M.A. Johnson, Anoka, Minn., on the brief), for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and RONEY,[*] Senior Circuit Judge.

WOLLMAN, Circuit Judge.

David Allen Carlson appeals from the district court's[1] order adopting the magistrate judge's[2] recommendation that Carlson's petition for writ of habeas corpus be denied. We affirm.

---

[*] The Honorable Paul H. Roney, United States Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

[1.] The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

[2.] The Honorable Bernard P. Becker, late a United States Magistrate Judge for the District of Minnesota.

## I.

On March 20, 1976, the nearly nude body of twelve-year-old Lisa Wahl was found in the woods near Carlson's home. Because he was one of the two people to last see Lisa alive, police questioned Carlson at his home about his activities between the time of Lisa's disappearance and the time of the discovery of her body. The questioning officers noticed a dark stain on Carlson's jacket and asked him about it. When Carlson gave an implausible answer and refused to cooperate, the officers arrested him and seized the jacket.

At trial, the prosecution presented evidence that demonstrated that hairs found in Lisa's hand and on her groin matched samples taken from Carlson and that hairs found in Carlson's bedroom matched samples taken from Lisa's head. An analyst from the crime lab testified to the similarities between the hairs used as evidence at trial and samples taken from Carlson and from Lisa's body. A second analyst testified in much the same way, going on to testify that there was a 1 in 4500 chance that the head hairs found in Lisa's hands were not Carlson's and a 1 in 800 chance that the pubic hairs found on Lisa's groin were not Carlson's. Evidence was presented that established that the blood stain on Carlson's coat and a spot of blood found on the floor of Carlson's bedroom matched Lisa's blood type.

During a lengthy closing argument, the prosecutor referred to his own daughter and appealed to the jury to remember their own children. He referred to the length of time it took for Lisa Wahl to die and the suffering she went through. He appealed to the jury to "prevail over evil." Carlson did not object to the prosecutor's closing argument, nor did he ask for a curative instruction to the jury. The jury was instructed that it was to consider only the evidence and that the arguments of counsel were not evidence.

Carlson was convicted of first degree murder and was sentenced to life imprisonment. He appealed to the Minnesota Supreme Court, which affirmed his conviction.

*State v. Carlson,* 267 N.W.2d 170 (Minn. 1978).

## II.

We address six issues in this appeal. Carlson claims that he was arrested without probable cause; that he should have been given *Miranda* warnings before the initial questioning at his home; that expert testimony as to probability of the hairs not being Carlson's hairs was improperly admitted; that the prosecution's closing argument was improper; that the destruction during testing of the entire blood sample from his coat unfairly prejudiced him; and, finally, that the evidence was insufficient, as a matter of law, to convict him.

■ Carlson first claims that there was no probable cause for his arrest. He argues that the bloodstain and hair evidence, the statements he made to police, and the evidence found in his home after his arrest were tainted by an illegal arrest and should not have been introduced at trial. This argument is barred, however, by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). There, the Supreme Court held that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 482, 96 S.Ct. at 3046. Carlson appealed this issue to the Minnesota Supreme Court, which found that probable cause existed for Carlson's arrest. *State v. Carlson,* 267 N.W.2d at 174. Thus, Carlson had an opportunity to fully and fairly litigate this claim, and he is foreclosed from renewing it in this proceeding.

■ Second, Carlson argues that he should have received *Miranda* warnings before the initial questioning at his home. We review the magistrate's finding that Carlson was not in custody at the time of the initial questioning under a clearly erroneous standard. *United States v. Griffin,* 922 F.2d 1343 (8th Cir.1990). We will af-

firm the finding unless it is unsupported by substantial evidence in the record, is based on an erroneous interpretation of the law, or we are left with a firm conviction that a mistake has been made. *United States v. Jorgensen,* 871 F.2d 725, 728 (8th Cir.1989). We find no clear error in the magistrate's finding that Carlson was not in custody and that no *Miranda* warnings were necessary at the time of the initial questioning.

Third, Carlson claims that expert testimony as to the probability of the hairs not being Carlson's hairs was improperly admitted. Carlson, acting pro se, did not raise this issue in the district court. Pro se petitions should be liberally construed in favor of the petitioner. *See, e.g., Wallace v. Lockhart,* 701 F.2d 719, 727 (8th Cir.), *cert. denied,* 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983); *Hill v. Wyrick,* 570 F.2d 748, 751–52 (8th Cir.), *cert. denied,* 436 U.S. 921, 98 S.Ct. 2272, 56 L.Ed.2d 764 (1978). Carlson's habeas corpus petition challenged the admission of testimony from the crime lab analyst. Even construing the petition liberally, however, we cannot say that it challenges the admission of statistical evidence given by the second analyst. Carlson cannot claim that he was unaware of the issue at the time he filed his petition in the district court, since it was fully considered by the Minnesota Supreme Court. That court found that the statistical evidence was improperly admitted, but that it was cumulative and therefore its admission constituted harmless error. *State v. Carlson,* 267 N.W.2d at 176. Since this issue was not raised below, it is not properly before us, and we will not consider it on appeal. *Warden v. Wyrick,* 770 F.2d 112, 114 (8th Cir.), *cert. denied,* 474 U.S. 1035, 106 S.Ct. 600, 88 L.Ed.2d 579 (1985).

■ Even if this issue were properly before us, Carlson's argument would fail. State law governs questions about the admissibility of evidence. *Berrisford v. Wood,* 826 F.2d 747, 749 (8th Cir.1987), *cert. denied,* 484 U.S. 1016, 108 S.Ct. 722,

98 L.Ed.2d 671 (1988). We will reverse an evidentiary ruling only if the error

> infringes upon a specific federal constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process.

*Id.* (citations omitted). The Minnesota Supreme Court held that the admission of statistical evidence was harmless error, and we agree.

■ Fourth, Carlson claims that the prosecutor's closing argument was improper and unfairly prejudiced him. As indicated above, Carlson made no objection to the prosecutor's remarks at the time, nor did he request a curative instruction to the jury. We will reverse for prosecutorial misconduct only if the conduct, even if improper, so prejudiced Carlson that he was unable to obtain a fair trial. *See United States v. Baker,* 855 F.2d 1353, 1362 (8th Cir.1988), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989). Having reviewed the comments Carlson identifies as objectionable, we agree with the magistrate judge that the prosecution did not misstate the facts and that the alleged improper statements, when viewed in the context of the entire argument[3] did not rise to the level of depriving Carlson of a fair trial.

■ Fifth, Carlson claims that the destruction of the entire blood sample from his coat when the crime lab tested it unfairly prejudiced him and deprived him of due process. The magistrate applied *Arizona v. Youngblood,* 488 U.S. 51, 56, 109 S.Ct. 333, 336, 102 L.Ed.2d 281 (1988). Under *Youngblood,* due process is violated only if there is bad faith on the part of the government. Here, the magistrate found no bad faith on the part of the crime lab analyst who performed the tests, and we agree. The sample was very small and the test was run twice because the first result was less than certain.

---

**3.** The transcript of the closing argument is about thirty pages long. Transcript of Record at 52.

Last, Carlson claims that the evidence was insufficient to support the conviction. We will overturn a state conviction for insufficient evidence only when, after viewing the evidence in the light most favorable to the prosecution, we are convinced that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Carlson was the last person to be seen with Lisa Wahl. Her body was found 200 yards from his house. The hairs found clutched in her hand and stuck to her groin matched samples taken from Carlson, and the hair found in Carlson's bedroom matched Lisa's. The bloodstain found on Carlson's coat and the blood spot found on the floor of Carlson's bedroom matched Lisa's blood. Accordingly, we cannot say that a rational jury could not have found beyond a reasonable doubt that Carlson murdered Lisa Wahl.

We express our appreciation to appointed counsel for his diligent efforts in presenting this appeal.

The district court's order denying the petition for writ of habeas corpus is affirmed.