the collection of the Debtor's assets by the Trustee.

Further, Missouri law provides that a lien under section 484.130 will not attach unless the judgment is in favor of, or provides pecuniary value to, the client. *Ross v. American Tel. & Tel. Communication Corp.*, 836 S.W.2d 952, 956 (Mo.Ct.App. 1992). *See also* Mo.Rev.Stat. § 484.130 ("a lien ... attaches to a ... judgment in his client's favor"). The result of this adversarial proceeding was that the Debtor was ordered to turn over $300,000 in additional assets. Although the judgment was modified downward by this court on appeal, *see Evans v. Robbins, supra*, 897 F.2d at 970–71, that modification was a direct result of the Trustee's revised estimate of the remaining claims against the bankruptcy estate and was in no way attributable to any effort by the Debtor's attorneys.

We conclude that the district court erred in finding that the attorneys had a priority lien over the interpleaded fund by virtue of section 484.130.

■ The attorneys argue in the alternative that their claim in the interpleaded fund has priority over that of the FDIC by virtue of an assignment by the Debtor to the attorneys. The parties allege that on or about June 22, 1990, the Debtor assigned $180,000 to the attorneys as compensation for legal services rendered through the course of the bankruptcy proceeding. The assignment was verbal but was reduced to writing on July 9, 1990. Notice of the assignment was served on the bankruptcy trustee the next day.

The district court found that while the assignment between the attorneys and the Debtor was a valid assignment, it did not have the effect of granting the attorneys priority to the interpleaded fund. "The general rule is that the assignee of a non negotiable obligation occupies exactly the same position with respect thereto that his assignor occupied. Such assignee takes subject to all defenses that might have been made against it while in the hands of the assignor at the time of assignment." *United Finance Plan, Inc. v. Parkview Drugs, Inc.*, 250 S.W.2d 181, 184 (Mo.Ct.

App.1952) (citations omitted); *see also Vittert Constr. & Inv. Co. v. Wall Covering Contractors, Inc.*, 473 S.W.2d 799, 803 (Mo.Ct.App.1971).

Without addressing the issue of the validity of the assignment, we agree with the district court that any right of the Debtor to the interpleaded fund by virtue of the assignment is subordinate to other claimants, namely the FDIC.

Based on the foregoing we conclude that the district court erred in finding that the attorneys had a priority lien on the proceeds of the interpleaded fund. Accordingly, the judgment of the district court is reversed and remanded for further proceedings consistent with the views expressed in this opinion.

Larry **MAYNARD**, Appellee,

v.

A.L. **LOCKHART**, Director, Arkansas Department of Correction, Appellant.

No. 92–1090.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1992.

Decided Dec. 14, 1992.

Kelly K. Hill, Little Rock, AR, argued (Winston Bryant and Kyle R. Wilson, on brief), for appellant.

Faber D. Jenkins, Jr., Sherwood, AR, argued for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

The State of Arkansas appeals from a district court order granting Larry Maynard federal habeas corpus relief under 28 U.S.C. § 2254. We reverse.

### I.

Maynard was charged with delivering a controlled substance (marijuana). The charge arose from events that occurred on February 25, 1984. On that day, law enforcement officers arrested William Cunningham at his residence near Mountain

Home, Arkansas. The officers found thirty-four one-quarter ounce bags of marijuana in Cunningham's car. Cunningham stated that he had received the marijuana from Maynard. Maynard's fingerprints were found on five of the bags; Cunningham's fingerprints were found on none.

Cunningham testified that he had sold marijuana and LSD for Maynard on a commission basis. He testified that Maynard would weigh and package the drugs and then provide them to him for resale. He stated that on February 25, 1984, he went to Maynard's residence, where Maynard gave him the thirty-four bags of marijuana. Cunningham testified further that in addition to supplying him with drugs, Maynard also had referred forty to fifty drug-seeking customers a week to him.

Charles Beta, an undercover informant, corroborated Cunningham's testimony. Beta testified that he had seen Maynard weigh and package marijuana on several occasions but had never seen Cunningham do so. Beta stated that he had purchased marijuana from Maynard several times in the past.

Maynard denied supplying the marijuana found in Cunningham's car. He testified that he had purchased marijuana from Cunningham on February 24, 1984, the day before Cunningham's arrest. He explained that his fingerprints were on the five bags of marijuana because he had handled them on February 24 as he was deciding which bag to purchase. He denied any relationship with Cunningham other than having bought marijuana from him.

The jury convicted Maynard and sentenced him to twenty years in prison. The Arkansas Court of Appeals affirmed his conviction, *Maynard v. State*, 21 Ark.App. 20, 727 S.W.2d 858 (1987) (en banc), and the Arkansas Supreme Court denied his petition for post-conviction relief filed pro se under Arkansas Rule of Criminal Procedure 37, *Maynard v. State*, No. CR 87–182, 1987 WL 19969 (Ark. Nov. 16, 1987) (per curiam).

On December 16, 1987, Maynard filed a pro se section 2254 petition alleging that his trial counsel had been constitutionally ineffective in failing (1) to object to Charles Beta's hearsay testimony; (2) to call to the stand one Kathy Zindell, whose testimony would have discredited Cunningham's testimony; (3) to emphasize to the jury inconsistencies in Beta's and Cunningham's testimony; and (4) to procure evidence that would have refuted Beta's and Cunningham's inculpatory testimony.

In response, the state asserted that Maynard had defaulted on the third and fourth allegations of ineffective assistance by failing to include them in his state petition for post-conviction relief. Following the state's response, the magistrate judge ordered Maynard, who was now represented by appointed counsel, to file an amended petition setting forth, among other things, any facts that might "constitute cause for and prejudice from" any alleged procedural default.

On January 4, 1991, Maynard filed an amended habeas petition in which he alleged that any procedural default had been due to his trial and appellate counsel's lack of experience, ignorance of the law, or oversight. He offered no showing of prejudice. He also alleged that he had been denied effective assistance of counsel for a fifth reason: that counsel had failed to object to testimony concerning Maynard's reputation as a drug dealer. As with his third and fourth allegations of ineffective assistance, Maynard had not included this fifth allegation in his state petition for post-conviction relief.

At the evidentiary hearing before the magistrate judge, Maynard asserted a sixth claim of ineffective assistance: that counsel had failed to move for a directed verdict at trial. Although the state reasserted at the hearing that Maynard had defaulted on his third and fourth allegations of ineffective assistance, Maynard advanced no showing of cause or prejudice with respect to these claims.

The magistrate judge recommended that Maynard be granted habeas relief. Although the magistrate judge noted in his findings and recommendations that the state had pled procedural default to some of Maynard's allegations, he made no ex-

press finding on the issue. The magistrate judge simply found that Maynard's trial counsel's performance had been deficient. In reaching this conclusion, he expressly cited all of Maynard's allegations of ineffective assistance, except the third. Additionally, the magistrate judge, *sua sponte*, raised a seventh instance of ineffective assistance of counsel, stating that counsel's performance had been deficient because counsel had placed Maynard's character at issue, thus allowing the prosecution to attack his character. The magistrate judge's only express finding as to whether counsel's performance had prejudiced Maynard's defense was the statement that counsel's failure to object during Beta's testimony had been "both devastating and prejudicial."

In its response to the magistrate judge's recommendation, the state alerted the district court to the fact that the magistrate judge had failed to make any finding on the procedural default issue. Nevertheless, the district court adopted the recommendation in its entirety without any analysis of the default issue and granted Maynard habeas relief.

## II.

### A. *Procedural Default*

■ We hold that the district court erred in granting Maynard habeas relief based on claims of ineffective assistance of counsel that were not raised in Maynard's state post-conviction petition without having first determined whether those allegations were barred from federal habeas review by procedural default.

■ We find that Maynard procedurally defaulted his third, fourth, and fifth ineffective assistance allegations by not raising

them in his state post-conviction petition. Maynard was required under then extant Arkansas law to raise ineffective assistance of counsel allegations in his state post-conviction petition. Ark.Code Ann. R.Crim.P. 37 (Michie 1992) (*see* Publisher's Notes); *Carrier v. State*, 278 Ark. 542, 647 S.W.2d 449, 450 (1983) (per curiam). Having received a ruling on the merits of a state post-conviction petition, a petitioner may not file a second such petition. *Collins v. State*, 280 Ark. 312, 657 S.W.2d 546, 548 (1983) (per curiam). Issues that could have been raised in the first post-conviction petition, but were not, are considered waived. *Id.* Consequently, because Maynard could have raised these ineffective assistance allegations in his post-conviction petition filed pro se, but did not, they are waived and thus procedurally defaulted.[1]

A state procedural default bars federal habeas review unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, ___ U.S. ___, ___, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). Based on the record before us, we conclude that Maynard has failed to establish cause for any of his defaults. Although Maynard has offered two showings of cause—counsel's inadequate performance and perceived futility—both are without merit.

In his amended federal habeas petition, Maynard maintained that any procedural default was due to his trial and appellate counsel's lack of experience, ignorance of the law, or oversight. The performance of Maynard's trial and appellate counsel is irrelevant to the issue of showing cause for the procedural defaults, however, for Maynard himself failed to raise them in his pro se state post-conviction petition.[2]

---

**1.** Although Maynard raised his first, second, and sixth allegations of ineffective assistance of counsel in his state post-conviction petition, raising those allegations in state court does not preserve for federal habeas review his third, fourth, and fifth allegations of ineffective assistance. To preserve an allegation of ineffective assistance for federal habeas review, a petitioner must present that specific allegation to a state court. *See, e.g., Kenley v. Armontrout*, 937 F.2d

1298, 1302–03 (8th Cir.), *cert. denied*, ___ U.S. ___, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991).

**2.** Even if Maynard's counsel had prepared Maynard's post-conviction petition, counsel's erroneous or inadvertent failure to raise allegations in a state post-conviction proceeding does not constitute cause to excuse the procedural defaults of the unraised allegations. *Coleman*, ___ U.S. at ___, 111 S.Ct. at 2566.

At the evidentiary hearing before the magistrate judge, Maynard implicitly offered perceived futility as a second cause for his procedural defaults. Although Maynard knew about these alleged errors when he filed his state post-conviction petition, he did not raise them in his petition because he "knew that it ... wasn't going to be of much difference pertaining to [his] case. [He] knew [he] had to go through that court before [he] could get to the District Court." Maynard's belief that it would have been futile for him to assert these allegations in his post-conviction petition cannot by itself establish cause for omitting the claims. *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982). "If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim." *Id.*

Having found no cause for the procedural defaults with respect to the third, fourth, and fifth claims of ineffective assistance, we need not address whether these alleged errors prejudiced Maynard's defense.

▇ The magistrate judge found, *sua sponte,* that trial counsel's performance had been deficient because counsel had opened the door to the issue of Maynard's character. We hold that it was improper for the magistrate judge to consider this defaulted instance of ineffective assistance without having first found cause for and prejudice from the default. In the absence of a finding of cause and prejudice, a federal court is precluded from reviewing procedurally defaulted claims on its own motion. *Stewart v. Dugger*, 877 F.2d 851, 854–55 (11th Cir.1989), *cert. denied*, 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990). A rule to the contrary could result in the undermining of several policies behind the procedural default doctrine and the cause and prejudice standard. For example, absent a showing of cause and prejudice, the principle of comity teaches that a state court should have the initial opportunity to consider and correct an alleged constitutional error that occurred in state court.

*See, e.g., Coleman,* —— U.S. at ——, 111 S.Ct. at 2555; *Engle,* 456 U.S. at 128–29, 102 S.Ct. at 1572. Allowing federal courts to side-step the procedural default doctrine would also undermine the Supreme Court's express desire to protect the legitimacy of state procedural rules, *see, e.g., Wainwright v. Sykes*, 433 U.S. 72, 88–90, 97 S.Ct. 2497, 2507–08, 53 L.Ed.2d 594 (1977), and to promote finality in criminal proceedings, *see, e.g., id.; Engle,* 456 U.S. at 126–28, 102 S.Ct. at 1571–72.

As with the defaulted claims raised by Maynard, we find no cause for the default with respect to the issue raised by the magistrate judge, and therefore we do not address whether that defaulted claim prejudiced Maynard.

A narrow exception to the cause and prejudice standard exists where the petitioner can "demonstrate that failure to consider [his] claims will result in a fundamental miscarriage of justice." *Coleman,* —— U.S. at ——, 111 S.Ct. at 2565. A case falls within this exception if the petitioner can show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). To establish actual innocence, a federal habeas petitioner must "show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have" convicted him. *Cornell v. Nix*, 976 F.2d 376, 381 (8th Cir.1992) (en banc) (quoting *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2517, 120 L.Ed.2d 269 (1992)). Applying this standard to the record *de novo, id.* at 381, we conclude that Maynard has made no such showing.

Accordingly, we hold that Maynard's third, fourth, and fifth claims of ineffective assistance of counsel, as well as the instance raised *sua sponte* by the magistrate judge, are barred from federal habeas review and should not have been considered.

## B. *Ineffective Assistance of Counsel*

▇ We turn to the merits of Maynard's first, second, and sixth allegations of ineffective assistance. An ineffective

assistance of counsel claim presents a mixed question of law and fact. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). We review the district court's legal conclusions *de novo* and its factual findings for clear error. *Wilson v. Armontrout,* 962 F.2d 817, 819 (8th Cir.) (citing *Couch v. Trickey,* 892 F.2d 1338, 1341 (8th Cir. 1989)), *cert. denied,* — U.S. —, 113 S.Ct. 383, 121 L.Ed.2d 293 (1992).

■ To establish a claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel's performance is deficient if "counsel's representation [falls] below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. Counsel's performance prejudices an individual's defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

■ In his first allegation, Maynard claims that his trial counsel was ineffective in failing to make a hearsay objection to certain testimony by Charles Beta. Maynard made this same argument to the Arkansas Supreme Court in his state petition for post-conviction relief. The Arkansas Supreme Court, however, held that the testimony at issue was not hearsay under Arkansas' rules of evidence. *Maynard v. State,* CR 87–182, slip op. at 2, 1987 WL 19969 (Ark. Nov. 16, 1987) (per curiam). We are bound by the Arkansas Supreme Court's ruling, because state law governs questions concerning the admissibility of evidence. *Carlson v. State,* 945 F.2d 1026, 1029 (8th Cir.1991) (citing *Berrisford v. Wood,* 826 F.2d 747, 749 (8th Cir.1987), *cert. denied,* 484 U.S. 1016, 108 S.Ct. 722, 98 L.Ed.2d 671 (1988)). As the Supreme Court recently reemphasized, "[I]t is not the province of a federal habeas court to reexamine state court determinations on

state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* — U.S. —, —, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *see also Kerr v. Caspari,* 956 F.2d 788, 790 (8th Cir.1992). Accordingly, we will reverse a state-court evidentiary ruling only if it "infringes upon a specific federal constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process." *Berrisford,* 826 F.2d at 749; *see also Kerr,* 956 F.2d at 790. Maynard has not established either showing.

■ With respect to the allegation that trial counsel was ineffective in failing to call Kathy Zindell as a witness, Maynard asserts that Zindell was present when he allegedly purchased drugs from Cunningham on February 24, the day before Cunningham was arrested. Maynard claims that Zindell would have testified that Maynard had purchased marijuana from Cunningham on February 24, thus corroborating Maynard's testimony and discrediting Cunningham's testimony that Maynard delivered the marijuana to Cunningham on February 25.

To establish prejudice under *Strickland,* Maynard must show that had Zindell testified, there is a reasonable probability that the outcome would have been different. In deciding whether an error by counsel prejudiced a defendant, we "consider the totality of the evidence" before the jury. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068. After reviewing the evidence presented at trial, we find that Maynard has not shown a reasonable probability that the outcome of his trial would have been different had Zindell testified.

The state presented persuasive evidence that Maynard delivered the thirty-four bags of marijuana to Cunningham. For example, Beta testified that he had purchased drugs from Maynard several times in the past and that he knew Cunningham was selling drugs for Maynard. He also

testified that he had seen Maynard cut and weigh drugs but had never seen Cunningham do so. On February 17, 1984, Beta went to Maynard's residence under police surveillance to purchase drugs. Beta testified that on that day Maynard had told him (Beta) that he (Maynard) did not have any drugs for sale but would be getting some soon from Chicago. Police surveillance indicated that Maynard then left the Mountain Home area and returned on February 25.

Beta attempted to purchase marijuana from Cunningham early on the afternoon of February 25. Cunningham said that he did not have any marijuana available at the time, that he would be receiving a supply later that day, and that Beta should return at 6:00 p.m. Cunningham testified that at about 6:00 p.m. he went to Maynard's residence, where Maynard gave him the thirty-four one-quarter ounce bags of marijuana in a large plastic bag. When Cunningham returned to his home around 7:00 p.m., the police arrested him and discovered the bags of marijuana in his car, five of which bore Maynard's fingerprints.

Maynard testified that his fingerprints appeared on the five bags because he had touched them as he was buying marijuana from Cunningham on February 24. Although it is true that Zindell's alleged testimony would have corroborated Maynard's version of the events, in the light of the evidence contrary to Maynard's testimony, we are confident that Zindell's testimony would not have changed the outcome of the trial.

Last, in his sixth allegation of ineffective assistance, Maynard maintains that his counsel was ineffective in not moving for a directed verdict. As with the previous allegation, Maynard has failed to establish that his trial counsel's alleged error prejudiced his defense. Under Arkansas law, a trial court will grant a directed verdict for a defendant only when there is no substantial evidence to support a guilty verdict. *See, e.g., Downey v. May,* 273 Ark. 207, 619 S.W.2d 614, 615 (1981) (stating the standard for granting a directed verdict). In view of the Arkansas Court of Appeals' holding on direct appeal, *Maynard v. State,* 21 Ark.App. 20, 727 S.W.2d 858 (1987) (en banc), that the state presented sufficient evidence to support the jury's verdict, we find no reasonable probability that the trial court would have granted Maynard's motion for a directed verdict.

In summary, we find that Maynard's third, fourth, and fifth allegations of ineffective assistance of counsel and the magistrate judge's *sua sponte* finding of ineffective assistance are barred from federal habeas review by unexcused procedural defaults. We also find that Maynard's first, second, and sixth allegations of ineffective assistance of counsel are without merit. Accordingly, we reverse the district court's order granting Maynard habeas relief and remand the case to the district court with directions to dismiss with prejudice Maynard's habeas petition.