Howard Joseph ADAMS,
Petitioner/Appellant,

v.

Walter LEAPLEY, Warden, South Dakota State Penitentiary; Mark W. Barnett, Attorney General, State of South Dakota, Respondents/Appellees.

No. 93–4084.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1994.

Decided Aug. 8, 1994.

Robert A. Christenson, Sioux Falls, SD, argued, for petitioner/appellant.

Ann C. Meyer, Pierre, SD, argued (Mark W. Barnett, on the brief), for respondents/appellees.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Howard Joseph Adams appeals from the district court's[1] order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

## I.

On June 18, 1986, Adams and his brother-in-law, Jimmy Lee Boykin, were staying at Marlene Anawski's residence in Sioux Falls, South Dakota. At the conclusion of a party at Anawski's residence that night, Adams and Boykin walked to Stockman's Bar. At approximately 3:00 a.m., June 19, they left Stockman's and walked toward Prairie Market, where they happened upon DuWayne Jensen, an elderly man on his newspaper route. They accosted Jensen and forced him into his pickup truck. They then took Jensen to a field just outside of Sioux Falls and killed him with the knife that he used to cut newspaper bindings. Adams and Boykin then returned to Sioux Falls. They stopped at the parking lot of the John Morrell Plant, where Adams unloaded a bundle of newspapers from Jensen's pickup into a parked pickup. They then abandoned Jensen's pickup three blocks from Anawski's residence, returned to Anawski's, and went to sleep.

At Adams' trial, his two attorneys argued that Adams had left the bar without Boykin and returned to Anawski's. They contended that Boykin had killed Jensen, had returned to Anawski's, and had then enlisted Adams to help him cover up the crime. The jury convicted Adams of first-degree murder, first-degree robbery, and aggravated kidnapping, but decided against imposing the death penalty. The South Dakota Supreme Court affirmed his convictions, *State v. Adams*, 418 N.W.2d 618 (S.D.1988), and the denial of his state petition for a writ of habeas corpus, *Adams v. Leapley*, 489 N.W.2d 381 (S.D. 1992). Adams then filed this habeas action.

## II.

Adams raises two claims of ineffective assistance of trial counsel. To establish an ineffective-assistance claim, Adams must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel performed deficiently if their "representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. Counsel's performance prejudiced Adams' defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068, and if counsel's errors made the trial fundamentally unfair or unreliable, *Lockhart v. Fretwell*, —— U.S. ——, ——, 113 S.Ct. 838, 841–42, 122 L.Ed.2d 180 (1993).

■ Adams claims that his trial counsel erred by not having a mental-health expert examine him to determine the feasibility of pursuing the defenses of insanity, unconsciousness, and diminished capacity. We find that this claim is without merit, for Adams has not demonstrated that his attorneys had reason to believe that Adams was incapacitated or insane at the time he murdered Jensen. Indeed, at the state habeas hearing trial counsel thoroughly and convincingly explained why they had not had Adams examined and had not pursued any of these defenses. For example, counsel explained that Adams was able to recount lucidly the events surrounding the murder. Moreover, they stated that they had not wanted to admit that Adams had committed the crime in view of the fact he was facing a possible sentence of death. We also find that Adams has made no showing that there is a reason-

---

1. The Honorable John B. Jones, United States District Court Judge for the District of South Dakota.

able probability that raising these defenses would have changed the outcome of the trial.

■ Adams also claims that his counsel acted unreasonably by admitting in closing argument that Adams had loaded newspapers from Jensen's pickup into a pickup at the Morrell parking lot. We disagree. A Morrell's employee testified that he had seen a man closely matching Adams' physical description (including his height, weight, slight beer belly, and hair) in the Morrell parking lot loading something into a parked pickup. Additionally, Rex Riis, a state criminologist, testified that electrophoretic blood tests indicated that bloodstains found on Jensen's handkerchief and on the newspapers placed in the pickup could have come from Adams, who had recent cuts on his hands when he was arrested the day after the murder, but could not have come from Jensen or Boykin. In light of this evidence, Adams' counsel decided to acknowledge that Adams had placed the newspapers in the pickup. We find that counsel's decision constituted reasonable trial strategy given the strength of the state's case. Counsel merely acknowledged what the evidence suggested. Moreover, the admission meshed with trial counsel's defense that Boykin had killed Jensen and that Adams became involved only after the fact. In any event, even if we assume that making the admission constituted an unprofessional error, Adams has not established prejudice.

■ Adams next argues the trial court should not have admitted the results of the electrophoretic blood tests performed by Riis because the tests were too unreliable. On habeas review of a state conviction, we do not examine whether evidence was properly admitted under state law. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Our habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* "Accordingly, we will reverse a state-court evidentiary ruling only if it 'infringes upon a specific federal constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process.'"

*Maynard v. Lockhart,* 981 F.2d 981, 986 (8th Cir.1992) (quoting *Berrisford v. Wood,* 826 F.2d 747, 749 (8th Cir.1987), *cert. denied,* 484 U.S. 1016, 108 S.Ct. 722, 98 L.Ed.2d 671 (1988)). Adams argues that admitting the test results violated his right to due process. We disagree, for the state adequately established the reliability of the general scientific principles underlying electrophoretic blood testing, as well as the reliability of the specific testing techniques employed by Riis. We further note that Adams was able to challenge the evidentiary weight of these tests by thoroughly cross-examining Riis and by presenting his own expert witness.

■ Adams last argues that the trial court erred by admitting the testimony of two witnesses who had been hypnotized in attempt to enhance their recollection of events related to the murder. Hypnosis revealed little new information, however, and the trial court limited the witnesses' testimony to the contents of their prehypnotic statements to the police and the hypnotist. Recently, in denying Boykin's writ of habeas corpus, we found that admitting these two witnesses' testimony in this limited manner did not violate the Constitution, *Boykin v. Leapley,* 28 F.3d 788, 793–94 (8th Cir.1994), and we reach the same conclusion here.

The order denying the petition for writ of habeas corpus is affirmed.