**Donnie Lee WYLDES, Jr.,
Plaintiff–Appellant,**

v.

**Thomas HUNDLEY, Warden,
Defendant–Appellee.**

No. 95–1212.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1995.

Decided Oct. 31, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 20, 1995.

Dean Stowers, Des Moines, Iowa, argued, for appellant.

Thomas McGrane, Assistant Attorney General, argued, for appellee.

Before MAGILL, FLOYD R. GIBSON, and HENLEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

Donnie Lee Wyldes, Jr., appeals the district court's[1] dismissal, on procedural grounds, of his habeas corpus petition. We conclude that Wyldes defaulted his federal juror misconduct claim by failing to raise it in the Iowa state courts. Because he has not asserted grounds sufficient to overcome the procedural bar, we affirm.

## I. BACKGROUND

In February of 1987, the State of Iowa charged Wyldes with attempted murder and murder in the first degree. During Wyldes's trial, the prosecuting attorney attempted to connect him to the crime scene by showing that Wyldes's .22 caliber rifle was the weapon used in committing the offenses. To buttress its case, the State offered the testimony of an expert witness who compared shell casings at the murder site with casings collected from four other locations where Wyldes was believed to have fired his shotgun. Naturally, Wyldes produced his own firearms expert to discredit the testimony of the State's witness.

The experts analyzed the mark that a gun's firing pin had made on each of the sample casings. Based on their findings, the experts agreed that the casings from one locale, identified as the "gravel road," were discharged from the same weapon utilized at the murder site. The witnesses disagreed, however, about the casings retrieved from the other three locations. According to the State's expert, it was possible that those casings could have been shot from the same gun used in committing the offenses. In contrast, Wyldes's expert claimed that the casings recovered from those three localities could not, in all likelihood, have been fired from the weapon used during the crime.

After submission of the evidence, the jury convicted Wyldes of both charges. Following the conclusion of the trial, Wyldes's attorneys conducted interviews with the jurors. Through these conversations, the attorneys learned that one juror, Paul Snyder, had performed his own experiment and reported the results to the other venirepersons. During a weekend recess, Snyder had fired his personal .22 caliber rifle and compared the marks that the gun's firing pin left on the expelled casings. Snyder communicated to other jurors that his gun's firing pin had made a different mark on each shell tested.

Upon learning of Snyder's independent research, Wyldes's counsel moved for a new trial based, among other things, on juror misconduct. The attorneys presented supporting affidavits from three other jurors indicating that Snyder had engaged in the inappropriate activity. The State objected to the motion and produced an affidavit in which Snyder stated that, although he had intended to test fire his rifle, he had never actually conducted the experiment as claimed. The trial judge denied the requested relief, and Wyldes appealed his conviction.

■ On direct appeal, Wyldes argued under Iowa law that Snyder had engaged in juror misconduct sufficient to justify a new trial. In other words, Wyldes claimed, using the appropriate legal standard in the state, that there was a reasonable probability that Snyder's activity influenced the verdict.[2]

---

1. The HONORABLE CHARLES R. WOLLE, United States District Judge for the Southern District of Iowa.

2. In order to prevail on a juror misconduct claim in Iowa, a party must show:

 1. evidence from the jurors that consists only of objective facts as to what actually occurred in or out of the jury room bearing on misconduct;

 2. that the acts or statements complained of exceeded tolerable bounds of jury deliberation; and

 3. that the misconduct was calculated to, and with reasonable probability did, influence the verdict.

The Iowa Court of Appeals affirmed the conviction in an unpublished opinion, and the Iowa Supreme Court denied further review.

Wyldes then initiated an action in state court seeking postconviction relief. In that suit, which also raised juror misconduct as a basis for overturning his conviction, Wyldes for the first time explicitly referred the state courts to federal law. The postconviction trial court denied the petition, and Wyldes again filed an appeal. The Iowa Court of Appeals employed two independent theories in affirming the trial judge's decision to dismiss the juror misconduct claim. First, the court determined that, because Wyldes had alleged juror misconduct to directly assail his conviction, the doctrine of issue preclusion barred relitigation of that issue. Additionally, the appellate court used Iowa Code § 822.8 (1995) as an alternative prohibition on reconsideration of the juror misconduct claim. That statute proscribes relitigation "in a postconviction proceeding [of] any ground which was finally adjudicated on direct appeal." [3] *Armento v. Baughman*, 290 N.W.2d 11, 12 (Iowa 1980); *see* Iowa Code § 822.8 (1995). In an attempt to bypass the statutory procedural barrier, Wyldes alleged that he had received ineffective assistance from his counsel at trial and on direct appeal. Despite Wyldes's arguments, the Iowa Court of Appeals refused to grant relief; the Iowa Supreme Court declined to review the case.

Wyldes later brought this federal habeas corpus action under 28 U.S.C. § 2254 (1988). Before the district court, Wyldes asserted that juror misconduct deprived him of his federal constitutional rights: to confront and cross-examine witnesses, to a decision based solely on the evidence presented at trial, and to a fair and impartial jury capable and willing to decide the case on the evidence presented at trial. Specifically finding that on direct appeal "neither petitioner, nor the [S]tate, nor the Iowa appellate courts cited or mentioned the federal Constitution or any other federal case law or statute in connection with the misconduct claim," the district court reasoned that Wyldes had defaulted this arguably federal claim. Further, because Wyldes "did not argue in state court that counsel [at trial and on direct appeal were] ineffective in failing to preserve his federal claims," the district court ruled that the prisoner could not allege ineffective assistance of counsel in arguing cause to excuse the procedural bar. For similar reasons, the district court rejected Wyldes's independent claims of ineffective assistance of counsel.[4] Finally, the district court concluded that Wyldes did not "argue [ ]or offer to show" his actual innocence, and the court accordingly dismissed the writ.

On appeal to this court, Wyldes claims that the district judge committed error by refusing to consider the merits of his habeas petition. For the following reasons, we affirm the district court's dismissal of the writ.

## II. DISCUSSION

### A. Fair Presentation

■ In refusing to consider Wyldes's federal juror misconduct claim during his state collateral proceedings, the Iowa Court of Appeals determined that Wyldes had litigated the "identical issue" during his direct

*State v. Sauls*, 391 N.W.2d 239, 241 (Iowa 1986).

In the instant appeal, the parties assume that the federal courts merely require a criminal defendant to show a "reasonable possibility" that the misconduct affected the verdict. This court, however, has never explicitly adopted the reasonable possibility test. *Cf. United States v. Bassler*, 651 F.2d 600, 603 (8th Cir.1981) (assuming *arguendo* that the reasonable possibility test would apply to claims of juror misconduct), *cert. denied*, 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 305 (1982). To facilitate our discussion of this case, we will assume that the applicable federal standard is the "reasonable possibility" test. We do not, however, necessarily adopt that test as the Eighth Circuit standard on this issue.

**3.** The statute reads in relevant part:

Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction or sentence ... may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

Iowa Code § 822.8 (1995).

**4.** In this appeal, Wyldes challenges only the district court's dismissal of his juror misconduct claim. We thus do not consider his separate claims asserting ineffective assistance of counsel.

appeal. Therefore, according to Wyldes, the appellate court concluded that he had "fairly presented" the federal claim in a state forum. Wyldes maintains that this amounts to a "historical factual finding" to which federal courts must accord great deference pursuant to 28 U.S.C. § 2254(d) (1988). Consequently, because the state courts had a fair opportunity to consider the federal issue, but did not, he argues that the district court committed error by declining to reach the merits of his claim.[5]

 Wyldes, however, misstates the law. Resolving whether a petitioner has fairly presented his claim to the state courts, thus permitting federal review of the matter, is an intrinsically federal issue that must be determined by the federal courts. "Because exhaustion functions as a federal court gatekeeper, the federal, not the state, courts decide when the state process has been exhausted or should be deemed ineffective because of delay." *Harris v. Champion,* 15 F.3d 1538, 1556 (10th Cir.1994). We thus must determine whether Wyldes did, indeed, fairly present the federal juror misconduct claim during his direct appeal.

 To satisfy the fair presentation requirement, we traditionally demand that a habeas petitioner have presented "the same legal theories and factual bases to the state courts." *Pollard v. Armontrout,* 16 F.3d 295, 297 (8th Cir.1994). Nonetheless, "[al]though the constitutional substance of a claim must be apparent, it is not necessary to cite 'book and verse on the federal constitution.'" *Satter v. Leapley,* 977 F.2d 1259,

1262 (8th Cir.1992) (quoting *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971)). At minimum, though, the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law. *Luton v. Grandison,* 44 F.3d 626, 628 (8th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1262, 131 L.Ed.2d 141 (1995); *McDougald v. Lockhart,* 942 F.2d 508, 510 (8th Cir.1991) ("Explicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court"). Our exhaustion analysis, described by Wyldes as "too narrow," has recently been vindicated by the United States Supreme Court in *Duncan v. Henry,* —— U.S. ——, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam).

In *Duncan,* the Supreme Court addressed the broad issue now before us in this appeal. *Id.* at ——–——, 115 S.Ct. at 887–88. The Court concluded that, in order to give state courts a meaningful opportunity to correct alleged violations of prisoners' federal rights, those courts "must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Id.* at ——, 115 S.Ct. at 888. If a state prisoner wishes to properly claim that his incarceration violates federal law, "he must say so, not only in federal court, but in state court." *Id.* The Court further announced that "mere similarity of claims is insufficient to exhaust." *Id.*

We conclude that Wyldes did not fairly present the federal juror misconduct claim during his direct appeal.[6] The district court

---

**5.** Wyldes additionally contends that the Attorney General of Iowa "convinced" the state postconviction courts that the federal juror misconduct claim is identical to a misconduct allegation under Iowa law. Thus, the doctrine of judicial estoppel should prohibit the State from here asserting that, because the claims are distinct, the Iowa courts never received a fair opportunity to review them.

The principle of judicial estoppel "bars a party from taking inconsistent positions in the same litigation." *Morris v. California,* 966 F.2d 448, 452 (9th Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992); *see Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.,* 4 F.3d 605, 609 (8th Cir.1993) (applying the canon in a diversity case). We do not feel that the State has

made contradictory arguments throughout this litigation. Rather, in its postconviction appellate brief, the State alerted the Iowa court that it was "the first time Wyldes ha[d] raised a constitutional claim...." *Wyldes v. Hundley,* No. 3–234/92–697, Appellee's Br. at 12 (Iowa Ct.App.1993). The State then argued that Wyldes could not show the cause and actual prejudice necessary to allow the court to review the "new" claim. *Id.* Thus, we do not feel obliged in this instance to exercise our discretion and invoke the equitable doctrine of judicial estoppel.

**6.** It is appropriate at this time to mention the debatable constitutional nature of Wyldes's claim. We have never found that a particular test for juror misconduct is compelled by constitutional considerations and therefore properly

correctly observed that Wyldes relied exclusively on Iowa law in his initial attempt to overturn the conviction, and he certainly did not refer the state courts to the United States Constitution or even a single federal case. Although the factual foundation underlying the federal juror misconduct claim parallels Wyldes's allegations in state court, Wyldes did not on direct appeal present the state courts with "the same legal theories" asserted here. Indeed, far from being even "somewhat similar," the applicable federal test for juror misconduct is distinctly different from its Iowa counterpart.

■ Where juror misconduct exposes the jury to factual matters not in evidence, we presume prejudice and require the government to prove beyond a reasonable doubt that the inappropriate activity did not harm the defendant. *United States v. Blumeyer,* 62 F.3d 1013, 1016–17 (8th Cir.1995). By contrast, a criminal defendant in Iowa shoulders the burden of proof and faces the onerous task of establishing that the misconduct was calculated to, and with reasonable probability did, influence the verdict. *See State v. Christianson,* 337 N.W.2d 502, 504 (Iowa 1983). In fact, while explicitly rejecting the reasonable possibility test, the Supreme Court of Iowa stated, "The difference between a possibility and a reasonable probability is significant. [Prior Iowa Supreme Court] decisions demonstrate the reasonable probability requirement is not easy to satisfy." *State v. Cullen,* 357 N.W.2d 24, 28 (Iowa 1984); *see also Sauls,* 391 N.W.2d at 241 n. 2 (rejecting again the reasonable possibility test because it "impermissibly lower[s] the threshold at which a verdict must be set aside").

Under these circumstances, we cannot agree that Wyldes on direct appeal alerted the Iowa courts to the constitutional substance of his claim. Accordingly, we conclude that Wyldes did not fairly present his claims to the state courts during their initial review of his conviction.

applicable on collateral review of state proceedings. Alternatively, the standard might simply be applied as a corollary to the courts' supervisory powers. To be sure, if the State of Iowa did not violate Wyldes's constitutional rights by applying the reasonable probability test, he is not properly

## B. Procedural Default

■ The Iowa Court of Appeals applied Iowa Code § 822.8 (1995) to bar consideration of Wyldes's postconviction federal juror misconduct claim. It is axiomatic that we may not review state prisoners' habeas claims dismissed by state courts on "independent and adequate state law grounds." *Oxford v. Delo,* 59 F.3d 741, 744 (8th Cir.1995). This important precept applies, however, only when the state procedural rule is both 1) firmly established and 2) regularly followed. *Id.*

■ The Iowa legislature enacted § 822.8 in 1970, and there is little question that the rule was firmly established at the time of Wyldes's postconviction appeal. Wyldes, though, argues that the State of Iowa has inconsistently applied the provision. His argument focuses upon that portion of the statute that prevents postconviction litigation of certain claims "unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application." Iowa Code § 822.8 (1995). Wyldes insists that the Iowa courts have erratically applied this "sufficient reason" clause.

Wyldes claims that the state courts have failed to consider the "sufficient reason" exception in an overwhelming majority of cases involving petitioners who attempt to relitigate previously adjudicated claims. To clarify this enigma, we offer a statement from the Iowa Supreme Court:

> Issues that have been raised, litigated, and adjudicated on direct appeal *cannot be relitigated* in a postconviction proceeding. *If issues have not been presented on direct appeal,* the petitioner must meet the burden of showing "sufficient reason" for the failure to do so.

before this court. *See* 28 U.S.C. § 2254(a) (1988) (providing that habeas corpus is designed to remedy violations of state prisoners' federal rights). Because we use procedural grounds to dispose of Wyldes's petition, we save this constitutional question for another day.

*Wycoff v. State*, 382 N.W.2d 462, 465 (Iowa 1986) (citations omitted) (emphasis added). This interpretation of Iowa Code § 822.8 goes far to demonstrate why the Iowa courts do not apply the "sufficient reason" exception to relitigation cases. Of course, the Supreme Court of Iowa has ultimate autonomy in interpreting the laws of that state, and we are bound by its interpretation of this state procedural rule. *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir.1994) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991)). We therefore conclude that the state has consistently enforced the "sufficient reason" exception to the procedural bar.

We realize that, in this case, the Iowa Court of Appeals reasoned that Wyldes had previously litigated the federal juror misconduct claim. This explains the court's failure to discuss Wyldes's asserted sufficient reasons. We, however, have concluded as a matter of federal law that Wyldes did not on direct appeal fairly present the federal issue. That poses no serious impediment to our affirmance of the district court's decision, because the Iowa courts have, in any case, consistently applied § 822.8 to preclude consideration of claims that were either waived or not raised during direct review. *See Washington v. Scurr*, 304 N.W.2d 231, 235 (Iowa 1981) (applying § 822.8 in refusing to consider claim raised for the first time in postconviction proceeding); *Carroll v. State*, 466 N.W.2d 269, 271–72 (Iowa Ct.App.1990) (refusing to consider issue raised for first time in postconviction proceeding). We believe, then, that the Iowa Supreme Court would have applied § 822.8 in this case to bar consideration of Wyldes's federal juror misconduct claim. We are likewise confident that Wyldes's claims of "sufficient reason" would have been insufficient to overcome the procedural prohibition.

In sum, we are satisfied that Iowa Code § 822.8 (1995) suffices as an independent and adequate state procedural bar to Wyldes's federal claim of juror misconduct. We thus reach the inescapable conclusion that Wyldes defaulted this claim in state court.

## C. Cause and Prejudice

▮ We normally may proceed to the merits of a procedurally defaulted habeas claim only if the petitioner " 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.' " *Maynard v. Lockhart*, 981 F.2d 981, 984 (8th Cir.1992) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2564–65, 115 L.Ed.2d 640 (1991)). In appropriate cases, constitutionally ineffective assistance of counsel can serve as a cause that allows us to consider a defaulted argument. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). In this case, Wyldes attempts to establish cause by asserting that his counsel at trial and on direct appeal were ineffective in various respects.

▮ The Supreme Court has stated, and we, naturally, have insisted, that "a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 489, 106 S.Ct. at 2646; *accord Whitmill v. Armontrout*, 42 F.3d 1154, 1157 (8th Cir. 1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 249, 133 L.Ed.2d 174 (1995); *McKinnon v. Lockhart*, 921 F.2d 830, 832 (8th Cir.1990), *cert. denied*, 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991). Further, we require habeas petitioners to present to the state courts "the same specific claims of ineffective assistance made out in the habeas petition." *Tippitt v. Lockhart*, 903 F.2d 552, 554 (8th Cir.), *cert. denied*, 498 U.S. 922, 111 S.Ct. 301, 112 L.Ed.2d 254 (1990).

▮ As the district judge accurately stated, Wyldes "simply did not argue in state court that counsel was ineffective in failing to preserve his federal claims." Because Wyldes did not give the Iowa courts an opportunity to consider whether his lawyers were incompetent for failing on direct review to present the federal juror misconduct claim, that assertion is now barred. Therefore, he cannot establish cause sufficient to overcome his procedural default of the misconduct issue. As Wyldes has failed to show cause for the procedural default, we need not determine whether he has suffered actual

prejudice. *Leggins v. Lockhart,* 822 F.2d 764, 768 (8th Cir.1987), *cert. denied,* 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988).

### D. Actual Innocence

 Even though Wyldes has failed to show cause for his procedural default, we may reach the merits of his claim if he can " 'demonstrate that failure to consider his claims will result in a fundamental miscarriage of justice.' " *Maynard v. Lockhart,* 981 F.2d 981, 985 (8th Cir.1992) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564–65, 115 L.Ed.2d 640 (1991)). We may appropriately implement this narrow exception where it appears that a "constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649.

 Because Wyldes does not assert actual innocence as an independent ground for habeas relief, but merely as a "gateway" to allow us to consider his defaulted federal claim, this issue is governed by the Supreme Court's recent opinion in *Schlup v. Delo,* ─── U.S. ───, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). We have interpreted *Schlup* as interposing a two part test for a petitioner who raises a gateway claim of actual innocence. First, the petitioner must " 'support his allegations of constitutional error with new reliable evidence that was not presented at trial.' " *Whitmore v. Avery,* 63 F.3d 688, 690 (8th Cir.1995) (quoting *Schlup,* ─── U.S. at ───, 115 S.Ct. at 865). Next, the petitioner must prove " 'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *Id.* (quoting *Schlup,* ─── U.S. at ───, 115 S.Ct. at 867).

 Wyldes urges that he has consistently maintained his innocence throughout these proceedings. Were protestation of innocence the only prerequisite to application of this exception, we fear that actual innocence would become a gateway forever open to habeas petitioners' defaulted claims. This is untenable in light of the Supreme Court's observation that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare."

*Schlup,* ─── U.S. at ───, 115 S.Ct. at 865. Here, Wyldes has not supported his claim of constitutional error with new reliable evidence not presented at trial. Instead, we feel that the juror's misconduct resulted in, at most, the jury's consideration of matters duplicative of evidence introduced during Wyldes's trial. It necessarily follows that his gateway claim of actual innocence must fail.

### III. CONCLUSION

We find that Wyldes procedurally defaulted his claim of federal juror misconduct. Because he has not persuaded us that an exception to the procedural default properly applies, we affirm the district court's dismissal of his habeas corpus petition.

Affirmed.